UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------------- X
                                                    :
LONNIE TILLERY,                                     :          04 CV 317 (ARR)
                                                    :
                            Petitioner,             :          <u>NOT FOR</u>
                                                    :          <u>PUBLICATION</u>
        -against-                                   :
                                                    :          <u>OPINION AND ORDER</u>
JAMES CONWAY, Superintendent,                       :
                                                    :
                            Respondent.             :
                                                    :
--------------------------------------------------------------------- X

ROSS, United States District Judge:

By petition dated January 24, 2004, the petitioner, Lonnie Tillery, seeks a writ of habeas

corpus under 28 U.S.C. § 2254. For the following reasons, the court denies his petition.

## BACKGROUND

Following a trial in New York Supreme Court, Kings County, a jury convicted the

petitioner of Murder in the First Degree and Criminal Possession of a Weapon in the Second

Degree. The state court sentenced petitioner to an indeterminate term of imprisonment of

twenty-five years to life on the murder conviction and a consecutive term of fifteen years on the

weapons-possession conviction. Additionally, petitioner was sentenced to a consecutive term of

imprisonment of one and one-third to four years on a violation of probation on a youthful

offender adjudication for criminal possession of a controlled substance in the third degree. The

court also ordered petitioner's sentence to run consecutively with a previously imposed term of

imprisonment of five to fifteen years on another violation of probation.

1

The Appellate Division affirmed petitioner's conviction, see People v. Tillery, 300 A.D.2d 682, 751 N.Y.S.2d 781 (2d Dep't 2002), and the Court of Appeals denied his application for leave to appeal, see People v. Tillery, 99 N.Y.2d 620, 757 N.Y.S.2d 831 (2003). The instant petition timely followed.

Before this court, petitioner seeks habeas relief on four distinct grounds. First, petitioner claims that his right to counsel was violated when the police interrogated him outside the presence of an attorney representing him on unrelated pending claims. Second, petitioner claims that he was denied a fair trial because the prosecutor elicited at trial his post arrest refusal to provide police with a signed or videotaped statement. Third, petitioner claims that he was denied a fair trial because the prosecution failed to demonstrate that there existed independent sources of identifications made of him by two prosecution witnesses. Finally, petitioner urges that there was insufficient evidence to support the jury's guilty verdict, or that the verdict was against the weight of the evidence. All four claims were exhausted at the state level, and are thus ripe for review on the merits. For the reasons discussed below, all of petitioners claims fail.

## DISCUSSION

On the night of April 3, 1999, a group of friends – Kevin Caesar, Negesti Chung, Rebecca Etoria, Rodney Francois, Shanique Harmon, Wendell Rosiclair, Lisa Smith, and Jamal Songui – spent the night at the Trinity Club on Clarkson Avenue in Brooklyn celebrating Mr. Caesar's birthday. While entering the club and once inside, Ms. Etoria observed petitioner – who was wearing a red "Coogie" sweater and dark pants – fraternizing with a man wearing beige colored pants, a white and beige shirt, and a beige hat, and another man wearing a grey "Enyce" sweatsuit. Petitioner and the two other men were also wearing bandanas around their necks. Mr.

2

Caesar, also saw the three men, and testified that they were watching every move that he and Mr. Rosiclair made.

Between 4:30 and 5:00 a.m., the club closed and everyone left the premises. After leaving the club in two cars and arriving at Ms. Chung's home on 35th Street, Mr. Caesar, Ms. Chung, Mr. Francois, Mr. Rosiclair and Mr. Sogui were talking in front of Ms. Chung's home. Petitioner and the two men with whom he was socializing at the club – one in beige clothing and the other in the grey sweatsuit – had followed the cars to Ms. Chung's street in a dark colored Jeep and parked down the block. The three men, who, but for petitioner, were now wearing bandanas or scarves over the lower portions of their faces, walked up the block to the other group, at which point one of the men said, "y'all know what this is. . . ." The three men, who were armed, demanded Rolex watches, chains, and money. In an attempt to comply with the demands, Mr. Rosiclair tried to remove his necklace, but had difficulty doing so. While he was attempting to remove it, petitioner hit Mr. Rosiclair on the head with a gun. Finally, pointing the gun directly at Mr. Rosiclair, petitioner shot him at close range. After the shooting, the three robbers fled to their Jeep and drove away.

## I.   Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence

3

presented in the State court proceeding." 28 U.S.C. § 2254(d). The phrase "clearly established Federal law" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000). A decision is "contrary to" clearly established federal law as determined by the Supreme Court "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court "(1) arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or (2) decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413. A decision is deemed an "unreasonable application" of clearly established Supreme Court law if a state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of [a] prisoner's case." Id. "Under the latter standard, 'a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Gilchrist v. O'Keefe, 260 F.3d 87, 93 (2d Cir. 2001) (quoting Williams, 529 U.S. at 411). Furthermore, under AEDPA, a federal court must defer to the state court's findings of fact, which are "presumed to be correct." 28 U.S.C. § 2254(e). "The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." Id.

## II.   Claims

### A.   Invalid waiver of right to counsel

Petitioner claims that his statement to police denying participation in the robbery and shooting should have been suppressed because, at the time of the statement, he was represented

by counsel on two prior unrelated charges, thereby unable to waive his <u>Miranda</u> rights outside the presence of his attorney. (Pet. Ground One.) Specifically, petitioner claims to have been represented by counsel both on unrelated charges for which he had been detained in Rome, New York immediately preceding his custodial interrogation in Brooklyn, and on other unrelated charges for which he was convicted in Kings County.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." Const. Am. VI. The right attaches only upon commencement of prosecution. Once the Sixth Amendment right to counsel attaches and has been invoked, any subsequent waiver during a police-initiated custodial interview is invalid. <u>Michigan v. Jackson</u>, 475 U.S. 625, 636 (1986). Petitioner argues that since his right to counsel had attached in the Rome, New York, action, he could not legitimately waive his right to counsel in the instant case. This argument fails.

"The [federal] Sixth Amendment right to counsel . . . is offense specific. It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced...." <u>Id.</u> "[J]ust as the right is offense specific, so also its <u>Michigan v. Jackson</u> effect of invalidating subsequent waivers in police-initiated interviews is offense specific." <u>Id.</u> In other words, there is no indelible right to counsel under federal law based on representation on an unrelated, pending charge. Once petitioner's Sixth Amendment right to counsel attached in the Rome, New York, action, it is true that he could not, under federal law, subsequently waive his right to counsel in <u>that</u> action outside counsel's presence. However, since the right is offense specific, the presence of counsel was not required to waive his right to counsel upon custodial interrogation pertaining to another, unrelated offense with respect to which no proceeding had yet

5

commenced.[1] Thus, petitioner's claim that he was unable to waive the right to counsel without counsel present fails as a matter of federal law. Insofar as petitioner challenges his conviction as secured in violation of a state law concerning interrogation absent the presence of counsel, this claim, too, must be denied, for on a petition for federal habeas relief, this court is "limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991); 28 U.S.C. § 2254(a).

B.    Prosecutor's Statements Regarding Petitioner's Refusal to Make Videotaped Statement

Petitioner next claims that he was denied a fair trial by the prosecutor's eliciting before the jury that petitioner declined to make a videotaped statement after his arrest. The government may not adduce at trial a defendant's post-arrest silence to impeach the credibility of his trial testimony or to establish his consciousness of guilt. Doyle v. Ohio, 426 U.S. 610, 619 (1976) ("it does not comport with due process to permit the prosecution during the trial to call attention to [the defendant's] silence at the time of arrest and to insist that because he did not speak about the facts of the case at that time, as he was told he need not do, an unfavorable inference might be drawn as to the truth of his trial testimony" (citation omitted)). Reversal of a conviction for prosecutorial comment on a defendant's post-arrest silence is warranted, however, only where the comment was "manifestly intended or (was) of such a character that the jury would naturally and

---

[1]Even if petitioner remained in custody when he was transported from Rome to Brooklyn, as he claims, the result remains the same. Because the Sixth Amendment right to counsel is offense specific, a person charged with a crime and in custody for that crime can still independently waive his right to counsel and speak to law enforcement officials regarding unrelated activities. See McNeil v. Wisconsin, 501 U.S. 171, 176-78 (1991). Any statement produced as a result of interrogation on unrelated charges – if given with a knowing, intelligent, and voluntary waiver of the right to counsel – is admissible. Id.

necessarily take it to be a comment on the failure of the defendant" to speak. <u>United States v. Pitre</u>, 960 F.2d 1112, 1124 (2d Cir. 1992) (citations omitted). "[W]hen the fact of earlier silence would not be used to impeach the exculpatory story, but rather to challenge the defendant's testimony as to his behavior following arrest, prosecutorial comment is permissible." <u>Doyle</u>, 426 U.S. at 619-20 n.11 (citation omitted). Additionally, prosecutorial comment on a defendant's post-arrest silence is permissible "when the defendant, by the impression he has sought to create, has opened the door." <u>United States v. Mathews</u>, 20 F.3d 538, 552 (2d Cir. 1994).

At trial, Detective Hinrichs, who took petitioner's oral statement upon his arrest, testified on direct examination that he offered petitioner the opportunity to make his statement on videotape for an Assistant District Attorney, and that petitioner chose not to do so. (Tr. at 715.) The prosecutor asked further questions of Detective Hinrichs on re-direct examination, alluding again to petitioner's refusal to sign a statement or talk to the District Attorney. (Tr. at 772-73, 776-77). Petitioner now challenges this line of questioning by the prosecution, urging that it violated his constitutional right against self-incrimination.

However, neither the evidence nor the prosecutor's remarks concerning its import violated of petitioner's rights, as their context illustrates. On summation, the prosecutor argued that, were the police corrupt and intent on obtaining petitioner's conviction based on a falsified statement, the absence of a videotaped statement would have permitted them to "writ[e] down anything they wanted on that piece of paper" (Tr. at 1009) and attribute it to petitioner. Viewed properly in this context, it is evident that the prosecutor referred to petitioner's post-arrest refusal to make a signed or videotaped statement only to show that the police did not compel him to make his non-videotaped statement. The remarks were not intended to be a comment on

petitioner's post-arrest silence, nor would the jury have "naturally and necessarily" viewed them as such. The fact that petitioner declined to make a videotaped statement – introduced as evidence that he had made the oral statement attributed to him and that the statement had been voluntarily made, rather than to show any consciousness of guilt or to impeach petitioner's credibility as a witness – did not constitute a violation of petitioner's constitutional rights.

In addition, and contrary to petitioner's assertions, the trial court gave a curative instruction to the jury, stating:

> You heard testimony at this trial that the defendant refused to sign the statement and declined to speak to an assistant district attorney.
> The law allows the defendant to do this, and you should not assume that the defendant is guilty or draw any unfavorable inference to the defendant because he exercised his right not to sign this statement or exercise his right not to speak any further about the case.
> Nevertheless, you may consider the testimony you heard about this conduct on the part of the defendant insofar as it may bear on your evaluation of the statement that the defendant did make to the police.

(Tr. at 1046-47); see United States v. Pitre, 960 F.2d at 1124 (court's curative instruction – that burden of proof always remains with prosecution, and that no inference could be drawn from defendant's failure to testify – insured that jury would consider fact of defendant's post-arrest silence only for limited, legitimate purpose and not to impeach defendant's credibility as witness generally).

Because the prosecutor's statements regarding petitioner's refusal to make a videotaped statement were not used to impeach the credibility of the petitioner's trial testimony or to establish his consciousness of guilt, and because the judge issued a curative instruction to the

8

jury with regard to these comments, petitioner's claim that he was denied a fair trial on this basis is denied.

### C. No Independent Source of Identification

Petitioner also claims that he was denied a fair trial because the prosecution "failed to demonstrate that there existed an independent source for the identification of petitioner by prosecution witnesses Negesti Chung and Jamal Songui." (Pet. Ground Three.) Petitioner's claim with respect to each witness differs slightly.

Ms. Chung participated in a pretrial lineup at which she identified petitioner as Mr. Rosiclair's shooter. She admitted at that time, though, that she was not "one hundred percent sure that [petitioner] was the same guy that [she] had seen on the street." (Tr. at 341.) On direct examination at trial, Ms. Chung again identified petitioner as the shooter, admitting again that she was not certain of her identification. (Tr. at 344-45).

When objection is made to a pretrial identification, an analysis of whether the witness may identify the defendant at trial involves a two-step inquiry. United States v. Tortora, 30 F.3d 334, 338 (2d Cir. 1994). First, the court inquires whether the pretrial identification procedures were unduly suggestive. Second, if the procedures were unduly suggestive, the court must ask "whether an in-court identification will be the product of the suggestive procedures or whether instead it is independently reliable." United States v. Concepcion, 983 F.2d 369, 377 (2d Cir. 1992). The factors to be considered in determining independent reliability include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty

demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. Neil v. Biggers, 409 U.S. 188, 199-200 (1972).

Here, however, there is neither evidence nor argument that the pretrial lineup was in any way impermissibly suggestive. Instead, petitioner urges that the weakness or uncertainty of Ms. Chung's identification testimony tainted the proceedings and, therefore, necessitated a showing by the prosecution that there existed an independent source for the identification. However, there is no requirement that the prosecution show an independent source simply because the identification testimony is weak. To the contrary, unless it is established that the identification is tainted by some sort of police or prosecutorial error or misconduct, there is no need to address the question of whether the identification is nonetheless reliable because it is the product of ample opportunity to view the petitioner. See Biggers, 409 U.S. 188; Brayboy v. Scully, 695 F.2d 62, 65 (2d Cir. 1982) ("Since the identification procedure was not impermissibly suggestive, the issue of the reliability of [the] identification of [petitioner] is not before [the court]."). Where pretrial identification procedures were not unduly suggestive, questions as to reliability of proposed in-court identification affect only its weight, not its admissibility. See United States v. Matthews, 20 F.3d 538 (2d Cir. 1994); Concepcion, 983 F.2d at 379. As such, Ms. Chung's identification of petitioner, while not without uncertainty, was sufficient to allow the jury to consider it as evidence, giving it whatever weight they deemed appropriate. Petitioner has failed to present any sort of taint that would trigger the need for the prosecution to establish reliability based on the existence of an independent source.

Unlike Ms. Chung, Mr. Songui did not participate in any pretrial identification procedure. Thus, with regard to Mr. Songui, petitioner presumably relies on the seating arrangement at trial

10

(with petitioner sitting next to defense counsel at the defense table) as the taint of the identification procedure giving rise to the need to establish the reliability of the identification based on the existence of an independent source. Few cases have addressed directly whether circumstances surrounding an in-court identification can be considered impermissibly suggestive. The Second Circuit has addressed the issue, but only in review of a federal criminal prosecution, and it limited its ruling to situations where the defendant had requested relief before trial. See United States v. Archibald, 734 F.2d 938 (2d Cir. 1984); see also Bond v. Walker, 68 F.Supp.2d 287, 300-01 (S.D.N.Y. 1999) (urging that the Archibald court limited its holding to cases in which defendant has moved prior to trial for a lineup and arguing that "Archibald is not good law, particularly on habeas review of a state conviction").

Thus the admissibility of an initial in-court identification must be analyzed under the more general due process test of United States v. Matthews, 20 F.3d at 547. "[W]here the circumstances of either a pretrial or an at-trial identification are suggestive, reliability is the linchpin for determining admissibility. . . . Even an identification at trial under circumstances that are tantamount to a showup is not per se inadmissible, but rather depends upon the totality of the circumstances." Id. (internal citations omitted). Decisions in other circuits explicitly hold that admissibility of an initial in-court identification is to be based on the totality of the circumstances. See, e.g., United States v. Murray, 65 F.3d 1161, 1168-69 & n.6 (4th Cir. 1995) ("based on the totality of the circumstances," agreeing that the fact that the witnesses saw defendant seated at the defense table prior to their testimony, in the absence of any other evidence of a likelihood of misidentification, is not a sufficient showing); United States v. Hill, 967 F.2d 226, 230-32 (6th Cir. 1992) (finding the Biggers analysis to apply to initial in-court

11

identifications for the same reasons that the analysis applies to impermissibly suggestive pretrial identifications); United States v. Rundell, 858 F.2d 425 (8th Cir. 1988) (applying the Biggers factors to initial in-court identifications); United States v. Domina, 784 F.2d 1361, 1369 (9th Cir. 1986) (holding that a trial court's denial of a request for an in-court line-up is reviewed under an abuse of discretion standard, and will only be reversed "if the resulting in-court identification procedures are so unnecessarily suggestive as to amount to a denial of due process").

Some in-court identifications are so unreliable that due process concerns mandate that measures be taken to avoid the "substantial likelihood of irreparable misidentification." The Second Circuit found such a situation present in Kennaugh v. Miller, where the identifying witness had participated in a lineup as well as several photo arrays and was unable to identify the petitioner during any of these repeated pretrial confrontations, thereby "heighten[ing] the risk that her in-court identification was induced by the suggestiveness of the setting in which it occurred." Kennaugh, 289 F.3d 36, 46 (2d Cir. 2002).

Turning to the reliability of Mr. Songui's identification testimony, viewed in light of the "totality of the circumstances", this court cannot say that Mr. Songui's identification testimony was improperly admitted. Although the seating arrangements at trial may well have been suggestive, the jurors were present to evaluate the reliability of Mr. Songui's identification. They were aware that Mr. Songui had identified the petitioner for the first time in court, and knew of Mr. Songui's criminal history. (Tr. at 479-80.) Further, Mr. Songui had been subjected to a rigorous cross-examination regarding his past untruthful statements to police. (Tr. at 503-07.) The jury was thus in a position to consider any flaws in the circumstances of his identification,

and his testimony generally, in assessing his reliability as a witness and the accuracy and truthfulness of his identification.[2]

However, even assuming, arguendo, that Mr. Songui's in-court identification of petitioner presented a "very substantial likelihood of irreparable misidentification" – because he had not participated in pretrial identification procedures and immediately after the shooting he had told police and a District Attorney that he did not see the shooter, and assuming that the seating arrangements in court were impermissibly suggestive – the court finds that any error in admitting his identification testimony was harmless. Where a constitutional violation is found, petitioner is not entitled to relief unless the violation caused prejudice. The Supreme Court ruled in Brecht v. Abrahamson, 507 U.S. 619, 638 (1993), that the test for reviewing error in a habeas petition is whether the error "'had substantial and injurious effect or influence in determining the jury's verdict.'" Id. (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). "Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" Id. at 637 (quoting United States v. Lane, 474 U.S. 438, 449 (1986)).

Any error by the state court in admitting the in-court identifications of either Ms. Chung or Mr. Songui, was harmless in light of the other evidence of petitioner's guilt presented at trial.

---

[2]In United States v. Domina, 784 F.2d at 1369, the Ninth Circuit pointed out the important difference between suggestive pretrial procedures and initial in-court confrontations, concluding that the jury's presence saved the in-court identification testimony from attack. "When the initial identification is in court . . . [t]he jury can observe the witness during the identification process and is able to evaluate the reliability of the initial identification," while pretrial lineups take place without a jury present. Id. at 1369. At trial, "[c]ounsel can both cross-examine the identification witnesses and argue in summation as to factors causing doubts as to the accuracy of the identification – including reference to both any suggestibility in the identification procedure and any countervailing testimony . . . ." Id.

Three other eyewitnesses – Mr. Francois, Mr. Caeser, and Ms. Etoria – unequivocally identified petitioner both at a pretrial lineup and in court. (Tr. at 96, 250, 615.) Additionally, Ms. Harmon and Ms. Smith implicated petitioner in the shooting by identifying the shooter as wearing a red "Coogie" sweater (Tr. at 198, 370), which the other eyewitnesses placed on petitioner. Moreover, it is unlikely that the testimony offered by either Ms. Chung and Mr. Songui affected the outcome of the trial to petitioner's detriment, as the jury was well aware of its weaknesses. As discussed above, Ms. Chung was equivocal in her identification, admitting that she was not certain that petitioner was the shooter. (Tr. at 341, 345.) Similarly, the jury was aware that Mr. Songui had a criminal history (Tr. at 479-80) and that he had originally denied to the police that he was able to identify the shooter. Further, the jury was witness to a rigorous cross-examination of Mr. Songui regarding his past untruthful statements to law enforcement officials. (Tr. at 503-07, 512, 521-26.) Thus, even if there was an error, it did not "ha[ve] substantial and injurious effect or influence in determining the jury's verdict," and was thus harmless. Petitioner's due process claim arising out of the in-court identifications by Ms. Chung and Mr. Songui is therefore rejected.

> D.     <u>Insufficiency of the Evidence</u>

Finally, petitioner claims that there was insufficient evidence to support the jury's guilty verdict (Pet. Ground 4.), specifically, because the evidence did not establish the intent to kill required under the criminal statute. For legal insufficiency claims, "[t]he standard to be applied in a federal habeas corpus proceeding . . . is 'whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" <u>Jackson v. Virginia</u>, 443 U.S. 307, 318-19

(1979) (emphasis in original). In applying this standard, the court must resolve any "conflicts in the testimony" by "defer[ring] 'to the jury's determination of the weight of the evidence and the credibility of the witnesses, and to the jury's choice of the competing inferences that can be drawn from the evidence.'" United States v. Best, 219 F.3d 192, 200 (2d Cir. 2000) (quoting United States v. Morrison, 153 F.3d 34, 49 (2d Cir. 1998)). Here, viewing all the evidence in the light most favorable to the prosecution and deferring to the jury's determinations regarding the credibility of the witnesses, a rational jury could find that the prosecution proved beyond a reasonable doubt all of the elements of Murder in the First Degree[3] and Criminal Possession of a Weapon in the Second Degree[4]

Viewed in the light most favorable to the prosecution, the evidence established that the petitioner, in the course of committing robbery, shot Mr. Rosiclair at close range and killed him. Petitioner's intent to kill Mr. Rosiclair can be "inferred from conduct as well as the surrounding circumstances." See United States v. Desena, 287 F.3d 170, 177 (2d Cir. 2002) (defendant's intent was inferred from his actions and the surrounding circumstances). Here, petitioner's intent to kill can easily be inferred from his actions. Multiple eyewitnesses testified, and forensic evidence confirmed, that petitioner shot the victim at point blank range, or, at most, from a few feet away. The gun was aimed directly at the victim's chest. Finally, eyewitnesses testified that

---

[3]"A person is guilty of Murder in the First Degree when . . .[w]ith intent to cause the death of another person, he causes the death of such person or of a third person; and . . . the victim was killed while the defendant was in the course of committing or attempting to commit [certain enumerated felonies, including] robbery . . . ." N.Y. Penal Law § 125.27(1)(a)(vii).

[4]"A person is guilty of criminal possession of a weapon in the second degree when, with intent to use the same unlawfully against another . . . [h]e possesses a loaded firearm." N.Y. Penal Law § 265.03(2).

15

the victim had not been resisting the robbery. Because the evidence at trial established that petitioner aimed his gun at close range directly at the unresisting victim's chest, the jury was entitled to infer that petitioner intended to kill the victim. See People v. Henning, 267 A.D.2d 1092 (4th Dep't 1999) (intent to kill inferred where defendant shot victim at close range); People v. McNamee, 266 A.D.2d 162 (1st Dep't 1999) (intent to kill inferred where defendant aimed gun at victim and pulled the trigger). Therefore, petitioner's claim that the evidence was insufficient to support the jury verdict fails.

To the extent that petitioner also contends that the "jury verdict convicting petitioner of Robbery in the Second Degree was against the weight of the evidence" (Pet. Ground Three), such a claim is not cognizable before this court. Unlike the legal sufficiency argument discussed above, which is based on federal due process principles, "[a] 'weight of the evidence' argument is a pure state law claim . . . ." Correa v. Duncan, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001) (citing Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). Federal habeas corpus relief does not lie for mere errors of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Therefore, the court is precluded from considering on federal habeas review the petitioner's claim that the jury verdict was "against the weight of the evidence."

## CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus is denied. Because petitioner has failed to make a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2) (1996), no certificate of appealability will be granted. The Clerk of Court is directed to enter judgment accordingly.

SO ORDERED.

Allyne R. Ross
United States District Judge

Dated: October 12, 2004
       Brooklyn, New York

SERVICE LIST:

*Pro Se Petitioner*
Lonnie L. Tillery
00A4366
Attica Correctional Facility
PO Box 149
Attica, NY 14011-0149

*Attorney for the Respondent*
Charles J. Hynes
District Attorney, Kings County
350 Jay Street
Brooklyn, New York 11201-2908

Attn: Leonard Joblove and Solomon Neubort,
        Assistant District Attorneys of Counsel